William TAUB

v.

GULF OIL CORPORATION and Gulf Oil Trading Company.

Civ. A. No. 77–863.

United States District Court,
E. D. Pennsylvania.

May 21, 1982.

William Taub, pro se.

Arthur L. Vangeli, James E. Farrell, Jr., Philadelphia, Pa., Barry F. Cannaday, William G. Duck, Houston, Tex., for defendants.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Defendants Gulf Oil Corporation and Gulf Oil Trading Company ("Gulf") have moved to dismiss this case pursuant to Fed. R.Civ.P. 37 for failure of plaintiff William Taub ("Taub") to comply with the Orders of this court regarding his deposition. Taub has wilfully and persistently obstructed the pretrial discovery process and has failed to appear for his deposition or offer a date for doing so over the course of three years notwithstanding the court's explicit directives. Taub's flagrant violation of the Orders of this court and his disregard for the Federal Rules of Civil Procedure justify dismissal with prejudice.

The court's power to impose the sanction of dismissal cannot be doubted. The Federal Rules allow dismissal for failure of a party to permit discovery. Fed.R. Civ.P. 37(b), (d). Dismissal with prejudice as a Rule 37 sanction must be accompanied by an articulation on the record of the factual, legal and discretionary issues presented. *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77 (3d Cir., 1982).

A finding of wilfulness, bad faith or fault is necessary before this extreme sanction should be imposed. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (*per curiam*)

(*citing Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)); *Quality Prefabrication, supra.* Initial noncompliance with a discovery order may not be sufficient to invoke this sanction, *see Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 975 (3d Cir. 1981), but a trial court does not abuse its discretion to dismiss when a discovery order is negligently or deliberately flouted for over six months. *Compagnie Des Bauxites De Guinea v. Insurance Co. of North America*, 651 F.2d 877 (3d Cir.) *cert. granted*, 454 U.S. 963, 102 S.Ct. 502, 70 L.Ed.2d 377 (1981). Moreover, "Rule 37 sanctions must be applied diligently" both to penalize and to deter such conduct. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–764, 100 S.Ct. 2455, 2462–2463, 65 L.Ed.2d 488 (1980).

A chronology of events in this case demonstrates Taub's utter disregard for the court, it's Orders and the litigation process. Taub was noticed for deposition on April 24, 1978. The deposition, scheduled for May 3, 1978, was adjourned at Taub's request to a date which he was to specify. On August 7, 1978 Taub was ordered by Judge Van Artsdalen to appear for deposition during the week of September 11, 1978. In the memorandum which accompanied the latter Order, Judge Van Artsdalen stated:

> The contention that to require Mr. Taub to attend would be forcing him to give up his living can only be considered, if plaintiff is bringing this action in good faith, to be plainly frivolous. The complaint alleges that plaintiff negotiated on behalf of the defendant to obtain a huge supply of oil from a foreign government or foreign sources during the oil crisis of several years ago. Plaintiff claims that defendant owes a commission to plaintiff of 52½ million dollars. It is inconceivable to any rational mind that one would be giving up one's living to attend a one or two day deposition if, in fact, he has a colorably valid claim of such a size.

On September 7, 1978, Judge Van Artsdalen rescheduled the deposition for October 25, 1978.

This case was reassigned to us on October 12, 1978. Thereafter Taub sought to avoid the deposition ordered by Judge Van Artsdalen by filing three motions for a protective order.

The first motion for protective order, filed October 19, 1978, sought to change the site of the deposition to the office of Taub's counsel on the ground that Taub, an international oil broker, would be intimidated by being deposed in the federal courthouse. This motion was denied. On October 23, 1978, Taub sought to postpone his deposition for sixty (60) days on the ground that his brother was then undergoing radiation treatment for a brain tumor at a hospital in Philadelphia. The next day, October 24, 1978, Taub moved to postpone his deposition until 2:30 p. m. on October 25, 1978 because he himself had to undergo "medical examinations and testing" outside of Philadelphia. In an effort to accommodate Taub's concern for his brother, this court Ordered that he appear for deposition for no more than four hours per day and subsequently, to allow for his medical examination, the deposition was continued by the court until October 25, 1978 at 2:30 p. m.

Mr. Taub did not appear for the deposition on October 25, 1978. Instead, he filed two affidavits in which he alleged that: (1) he feared for his life because of

> ... various attempts of murder on my life, at a time when I was kidnapped in Geneva, Switzerland, and the three people responsible were apprehended by INTERPOL in France, all of whom have been given prison sentences ....

and that (2) "to the best of his recollection" (and contrary to the representation made in his third motion for a protective order) a doctor's appointment conflicted with the deposition date and time. When Taub failed to appear, counsel for both parties made statements for the record. From that transcript two points are clear: (1) Taub was in Philadelphia at or about the time the deposition was to begin but he refused to appear, and (2) *that very morning* Taub's counsel had informed counsel for Gulf that

Taub was available for deposition.[1] (N.T. 11–12).

On November 9, 1978, Gulf's first motion to dismiss pursuant to Fed.R.Civ.P. 37(b) was denied. Disposition of that motion was influenced by the fact that the case had then been recently reassigned. (N.T. 30). However, Taub's deposition was ordered to take place on or before December 20, 1978;[2] a "lack of candor" with the court on the part of Taub and a "wilful violation of my order to appear at deposition," unexcused by any evidence presented to the court, was found (N.T. 31):

> ... the plaintiff has been given every consideration to which he is entitled and some to which he is not entitled and there will be no ifs, ands or buts. (N.T. 35) ... failure to have the plaintiff appear for that deposition on or before December 20 will result in dismissal of the case. (N.T. 32).

Taub defied this order; he did not offer Gulf a deposition date or appear for the deposition on or before December 20, 1978. On December 18, 1978, three papers were filed. Taub's counsel moved to withdraw his representation because Mr. Taub had refused to appear at deposition as ordered, despite the fact that counsel had "urged, cajoled, asked and begged" him to do so.[3] Taub filed a frivolous *pro se* appeal of the

November 9, 1978 Order and a motion to strike the memorandum and exhibits accompanying defendant's first motion to dismiss. On January 29, 1979, Taub moved to withdraw his frivolous appeal; this motion was granted on December 31, 1979.

On December 26, 1978, Gulf had filed a second motion to dismiss pursuant to Fed.R. Civ.P. 37. Because of Taub's pending appeal and his subsequent conflicting representations to the court about obtaining counsel[4] this motion to dismiss and plaintiff's motion to strike[5] remain before the court today.

■ Abuse of discovery, a prime cause of delay and expense in civil litigation, is intolerable. It breeds frustration with the courts and disrespect for the law. This court "simply cannot allow a plaintiff to bring a lawsuit and then fail to make *any reasonable* efforts to comply with the court-ordered discovery requests." *Ford Motor Co. v. Nu-Car Carriers*, 87 F.R.D. 21, 26 (E.D.Pa.1980) (emphasis added); *accord, Riverside Memorial Mausoleum, Inc. v. Sonnenblick-Goldman Corp.*, 80 F.R.D. 433 (E.D.Pa.1978). Where, as here, a party plaintiff wilfully fails to appear at deposition and frustrates the fundamental purpose underlying the discovery rules, the dismissal sanction is appropriate. *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611

---

1. The words of Taub's counsel are enlightening:
   It is my understanding that Mr. Taub came into Philadelphia at some time during the morning. I wasn't really in contact with him after our conversation, but that for whatever reasons appear in the Affidavits, his mind became set that he could not participate in the deposition this afternoon, and that is the extent of my statement .... (N.T. 12).

2. Taub was ordered to pay Gulf the reasonable expenses of the attempted deposition on October 25, 1978 and that motion to dismiss. (N.T. 34). Gulf submitted an itemization of expenses totalling $13,326.70 to which Taub objected. This figure was grossly inflated. In addition, the figure should be reduced for that part of Gulf's memorandum which was stricken. *See, infra* p. 200, n.5. Accordingly, Gulf is awarded $3,000 to be paid personally by Taub. *See,* Fed.R.Civ.P. 37(b)(2), (d).

3. This motion was granted on December 31, 1979.

4. Note the following *ex parte* correspondence from Taub to the court: ·
   12/27/78 Mailgram (seeks deferral of disposition of Gulf motion to dismiss as brother dying; states that he is *pro se* but intends to retain counsel);
   7/12/81 Mailgram (intends to retain counsel upon receipt of court's disposition of motions);
   7/13/81 Mailgram (ready and willing to proceed without counsel);
   11/23/81 Letter (obtained new counsel);
   12/1/81 Mailgram (obtained new counsel);
   1/26/82 Mailgram (new counsel withdrew).

5. Although the court did not take into account in deciding either of Gulf's motions to dismiss Gulf's references to other court cases involving Taub, we will grant Taub's motion and strike those portions of the memorandum and exhibits accompanying Gulf's first motion to dismiss which refer to such cases.

F.2d 32 (3d Cir. 1979); *Fisher v. Dean Witter Reynolds, Inc.*, 526 F.Supp. 558 (E.D.Pa. 1981).

In *National Hockey League, supra,* a district court was held to have acted within its authority when it dismissed a case for failure to answer interrogatories over seventeen months notwithstanding numerous extensions and court admonitions. This court and Gulf have waited almost *four years* for Taub, the person who commenced this action, to make himself available for deposition and so allow this case to proceed. There is no need to wait longer.[6]

Indeed, the court in the alternative might dismiss for lack of prosecution. When Taub made clear to the court that he wished to proceed following the withdrawal of his appeal, the court allowed a hearing on this motion and an opportunity for Taub's new counsel to file a *second* memorandum in opposition to Gulf's motion to dismiss. However, since then Taub has repeatedly requested delays because of his difficulty in retaining new counsel and supposed health problems. But Taub has failed to file doctor's certification of his alleged disabilities as ordered. *See,* court Orders dated December 2, 1981, January 27, 1982 and February 18, 1982. The court has the inherent power, grounded in long practice and its obligation to dispose of cases in orderly and expeditious fashion, to dismiss a case *sua sponte* for lack of prosecution. *Roadway Express, Inc. v. Piper, supra; Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

In light of the explicit warning contained in the court's Order of November 9, 1978 and the above-recited litany of Taub's defiance, Gulf's motion to dismiss is granted with prejudice to the renewal of this action.

---

**6.** Taub has had ample opportunity to argue his position to this court and he has done so through a memorandum in opposition to this motion, affidavits, prior hearings, *ex parte* mailgrams and *ex parte* telegrams. Under these circumstances he has not been deprived of due process or prejudiced in any way. *Cf., Brant v. United States,* No. 81–365 (E.D.Pa. filed February 23, 1982) (summary judgment decided without hearing).